UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASON MOORE,
        Plaintiff,

v.                                                          CIVIL ACTION NO. 15-13967-MPK

NSTAR ELECTRIC & GAS CO.,
        Defendant.


MEMORANDUM AND ORDER ON
DEFENDANT NSTAR ELECTRIC & GAS CO.'S
MOTION FOR SUMMARY JUDGMENT (#45)


KELLEY, U.S.M.J.

I. Introduction.

    On November 25, 2015, Jason Moore filed a complaint (#1) against defendant NSTAR

Electric & Gas Corporation (NSTAR)[1] alleging wrongful termination in violation of the

Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* Moore claimed to have incurred

damages in excess of $75,000 and requested just compensation for lost wages, lost benefits, and

pain and suffering. (#1 at 5.) On September 22, 2017, NSTAR filed a motion for summary

judgment (#45), asserting that Moore is not entitled to relief because (A) Moore has not established

his prima facie case for disability discrimination, (B) NSTAR proffers a legitimate, non-

discriminatory business rationale for Moore's termination, and (C) Moore fails to show that

---

[1] NSTAR Electric & Gas Corporation changed its name to Eversource Energy Service Company
on February 2, 2015, following a merger with Northeast Utilities Service Company. (#12 at 2.) In
this order the corporation will be referred to as NSTAR.

NSTAR's rationale is pretext for discriminatory animus. (#46.) The dispositive motion has been fully briefed (##46, 47, 50, 51, 58) and now stands ready for adjudication.[2]

## II. The Facts.

The undisputed facts are as follows. On June 4, 2007, plaintiff was hired as a full-time Overhead Lineworker at NSTAR Electric and Gas Corporation. (#47 ¶ 1; #47-1 ¶ 3.) NSTAR's Job Specification describes an Overhead Lineworker as someone who "installs, removes, constructs, inspects, maintains, operates, and repairs transmission and distribution systems, including overhead and underground plant and equipment." (#47 ¶ 2; #47-2 at 1.) Overhead Lineworkers must also climb poles, operate machinery, drive vehicles, and be able to "perform moderately heavy physical work outdoors in all seasons and at times for extended periods." (#47-2 at 1, 3.)

Upon being employed as an Overhead Lineworker, Moore became a member of Local 369 of the Utility Workers Union of America. (#47 ¶¶ 3-4.) NSTAR's Industrial Accident Disability Benefits Plan was then made available to him pursuant to Local 369's collective bargaining agreement. *Id.* As indicated in the Plan's provisions: "Employees abusing the Plan or having excessive absences shall be subject to disciplinary action by the Company. If the Local [union] claims the Company has exercised any of the foregoing rights in an unjust or unreasonable manner,

---

[2] The facts included in NSTAR's Statement of Material Facts (#47) are admitted unless properly controverted by Moore with specificity and citation to the record. *See* Local Rule 56.1 ("A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. . . . Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."). Plaintiff has not complied, or "effectively complied" (#58 at 1), with the provisions of the rule. Submitting documents as exhibits to an opposition does not suffice. No concise statement has been filed, and plaintiff has not provided page references to the exhibits.

such claim shall be subject to the [specified] Grievance Procedure . . . and Arbitration . . . ." (#47 ¶ 4; #47-2 at 6.)

On September 29, 2010, Moore fell from a pole while training to participate in a "Lineman's Rodeo."[3] (#1 ¶ 2; #47 ¶ 5; #50 at 2.) As a result of his fall, plaintiff fractured his tibia and fibula, requiring him to undergo surgery. (#1 ¶ 3; #47 ¶ 5; #50 at 20.)[4] Moore was discharged from Brigham and Women's Hospital on October 7, 2010, and transported to Spaulding Hospital for rehabilitation. (#47 ¶ 7; #50 at 2.) Liberty Mutual, NSTAR's workers' compensation administrator, partnered with NSTAR to document Moore's claim, and arranged for in-home physical therapy where plaintiff then resided. (#46 at 3; #47 ¶¶ 6, 12.)[5]

In December 2010,[6] NSTAR learned that Moore had discontinued his physical therapy in October, discharged his visiting nurse, and moved to an "unknown location." (#47 ¶ 14.) NSTAR then approved Liberty Mutual to retain SOS Services, Inc., a private investigator firm, to locate

---

[3] The "Lineman's Rodeo" is an NSTAR event where teams of NSTAR Lineworkers are judged on their execution of job related responsibilities. (#47-2 at 10.) When Moore fell, he was engaged in a weekly "Poletop/Hurtman Rescue" training exercise, which required him to climb a pole to "rescue" a training dummy in preparation for the "Rodeo." *Id.*

[4] While Moore alleges psychological injury (PTSD and depression) as a consequence of his fall, (#1 ¶ 6), his wrongful termination claim is based on his *physical* inability to perform the duties of an Overhead Lineworker, and NSTAR's purported failure to provide him with a reasonable accommodation. (#1 ¶ 7.) In any event, the undisputed records show that Moore had "physical limitations" as of October 18, 2011, with no mention of psychological limitations as an impediment to his work capacity. (#46 at 13.) Any claim for injury due to PTSD/depression is both unsupported and irrelevant to NSTAR's dispositive motion.

[5] Plaintiff did not advise NSTAR or Liberty Mutual when he was discharged from Spaulding Hospital. (#47 ¶¶ 8, 9.) NSTAR discovered in early November 2010 that Moore had been discharged on October 27, 2010, and was staying with a friend in Boston. (#47 ¶ 11.)

[6] When NSTAR attempted to contact plaintiff on December 2, 2010, his cell phone contact number had been disconnected. (#47 ¶ 13.)

Moore. (#47 ¶ 15.) SOS Services located plaintiff on January 25, 2011,[7] and two days later submitted a report to NSTAR, including a video, documenting Moore shoveling snow in his driveway. (#46 at 4; #47 ¶¶ 15, 17.) A second report, submitted on February 9, 2011, showed Moore driving a vehicle. (#46 at 4; #47 ¶ 19.)[8]

Following receipt of these reports, which were inconsistent with plaintiff's assertions of "total disability," NSTAR requested that Moore submit to an independent medical examination (IME). (#47 ¶ 21.) The IME was conducted on February 11, 2011, with the examining doctor concluding that Moore had "sedentary work capacity" with no extended periods of standing and "minimal stairs." (#46 at 5; #47 ¶¶ 21-22.) However, Moore continued to report to NSTAR that he was "totally disabled" with "no work capacity" as diagnosed by his treating physician. (#47 ¶ 23.)

Ana V. Matthews, a safety analyst for NSTAR, spoke with Moore approximately six times while he was on leave, and each time plaintiff advised that he could not return to work because of his difficulties with mobility. (#46 at 5; #47 ¶ 24.) As part of NSTAR's "normal business practice," surveillance on plaintiff continued through June, July, August, and September 2011. (#47 ¶¶ 27-28.) The reports provided during these months "show Moore engaged in substantial physical activity . . . [including] painting his house, climbing a ladder, [and] driving a vehicle." (#46 at 6; #47 ¶ 30.) Surveillance further depicted Moore jogging out of the rain, loading bags of trash into a truck, climbing on a ladder while holding a five-gallon paint can, cleaning his clapboard house on a ladder, carrying lumber, and carrying buckets of water. (#46 at 6; #47 ¶¶ 30, 32; #47-5 at 2.)

---

[7] Moore was found at a rental property he owned on Lindsay Street in Dorchester. (#47 ¶¶ 15, 17, 18.)

[8] The January 27th and February 9th surveillance reports are undisputed.

Meanwhile, plaintiff reported to NSTAR that he could not "walk without pain," "could not drive," nor could he "climb down stairs." (#46 at 5; #47 ¶ 33.) When asked what he could do, Moore told NSTAR that he "only could do some laundry and walk short distances before he was in more pain." (#46 at 6; #47 ¶ 30; #47-5 at 3.)

On October 17, 2011, Dr. McGowan, Moore's physician, reported that plaintiff could return to work for four hours per day, with no climbing poles, squatting, or kneeling. (#47 ¶ 35.) While Moore contends he requested a specific, vacant sedentary job, NSTAR's leave administrator noted that "had [Moore's] doctor allowed him to come back to work, then we would have complied with that and had offered some work that was sedentary. . . . It probably would have been . . . some computer work." (#50-2 at 31.)

However, in early October 2011, NSTAR's labor relations department initiated an investigation of Moore's claim, as the surveillance reports indicated potential abuse of the company's Accident Disability Benefits Plan. (#46 at 7; #47 ¶ 36.) On November 10, 2011, after a final decision was rendered, NSTAR notified plaintiff of his suspension for violating the Accident Disability Benefits Plan.  (#46 at 7; #47 ¶ 37.) Moore's local Union steward represented him in a disciplinary hearing conducted by NSTAR's labor relations department on December 5, 2011, which resulted in a finding that Moore had abused the Accident Disability Benefits Plan, and his suspension was justified. (#47 ¶¶ 38-39; #50-2 at 17.) NSTAR also determined that plaintiff's suspension would convert into a discharge on December 14, 2011. *Id*. On July 23, 2012, following an appeal hearing, NSTAR upheld its decision to discharge Moore. (#47 ¶ 40.) The termination was not further challenged by plaintiff or the Union under NSTAR'S grievance and arbitration proceedings. (#47 ¶ 41.)

After exhausting his administrative remedies with the MCAD and EEOC, [9] Moore brought the instant action against NSTAR on November 25, 2015, alleging wrongful termination in violation of the Americans with Disabilities Act (ADA). (#1 at 5; #47 ¶¶ 43, 47.) Specifically, Moore claims that NSTAR failed to provide him with a reasonable accommodation such as "computer work," which led to his discharge.  (#50 at 3, 8.) Moore does not admit or deny his alleged abuse of the Accident Disability Benefits Policy. (#46 at 16.) Rather, he contends that abuse of the policy is irrelevant because his inability to perform as an Overhead Lineworker, and NSTAR's "choice to ignore [his] medical reports," supports his claim for wrongful termination under the ADA. (#50 at 7, 11.)

### III. Summary Judgment Standard.

When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of averring the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). Once the moving party asserts the absence of genuine issues of material fact, the non-movant must demonstrate the existence of a factual dispute with requisite sufficiency to proceed to trial. *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006). However, ". . . improbable inferences, conclusory allegations, or rank speculation . . ." cannot alone defeat summary judgment. *Ingram v. Brinks, Inc.*, 44 F.3d 222, 229 (1st Cir. 2005).

---

[9] Moore filed a complaint with the MCAD on September 26, 2012, which was ultimately dismissed with a finding of "Lack of Probable Cause." (#47 ¶¶ 44-45.) In adopting the MCAD's findings, the EEOC issued a Dismissal and Right to Sue Notice on August 27, 2015. (#47 ¶ 47.)

In determining whether summary judgment is proper, the record must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in the non-movant's favor. *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006). Upon a party's motion, Rule 56 requires the entry of summary judgment where a party fails to establish the existence of any one essential element on which that party will bear the final burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (further internal quotation marks omitted)).

IV. Discussion.

Moore asserts that NSTAR terminated him in violation of the ADA[10] "due to his lack of ability to return as a full time lineman due to his disability, without [meeting the] legal requirement of providing reasonable accommodations in light of his significant injury." (#50 at 3.) In addition, Moore claims that "the lack of accommodations provided directly indicates . . . [that NSTAR] was only interested in [Moore] working as an Overhead Lineman, and not in any other work capacity." (#50 at 6.) ADA claims raised without direct evidence of discrimination, as here, rely on the *McDonnell Douglas* framework to survive summary judgment. *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 313 (1st Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). *McDonnell Douglas* applies a burden-shifting analysis, where (1) the plaintiff must establish a prima facie case of discrimination, (2) the defendant must then proffer a legitimate, non-discriminatory basis for its conduct, and (3) the plaintiff bears the final burden of creating a

---

[10] There is no claim under Massachusetts General Laws chapter 151B alleged in the complaint. If such a claim had been raised, it would be time-barred by the three-year statute of limitations for disability discrimination under Massachusetts law. *See* Mass. Gen. L. c. 151B, §§ 9, 5.

plausible inference that the defendant's "legitimate basis" is mere pretext for discriminatory animus. *Collazo-Rosado v. Univ. of P.R.*, 765 F.3d 86, 92 (1st Cir. 2014).

      A. *Prima Facie Showing of Discrimination.*

To establish a prima facie showing of discrimination, Moore must submit sufficient evidence that (a) he is disabled within the meaning of the ADA; (b) he is able to perform the job's essential functions with or without a reasonable accommodation; and (c) he was subjected to adverse employment action because of his disability. *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002). Drawing all inferences in Moore's favor, he has failed to make out his claim.

Moore presents undisputed documentation of his injury in the form of personal testimony and medical reports, which provide record of his surgery, rehabilitation, and mobility limitations. (#50 at 2.) The ADA provides that employers must reasonably accommodate an otherwise "'qualified individual' . . . who, with or without [the] reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under Title I of the ADA, a person who is not able to perform his or her original position may nonetheless be entitled to accommodation in the form of reassignment to a vacant position for which the employee is qualified. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 399 (2002) ("[T]he ADA says that the term reasonable accommodation may include . . . reassignment to a vacant position.") (quoting 42 U.S.C. § 12111(9)(B)) (internal quotations omitted); *Feliciano v. Rhode Island*, 160 F.3d 780, 786 (1st Cir. 1998) (noting that the ADA may require employers to accommodate disabled employees by placing them in vacant positions they can perform, but that plaintiff had not shown such position existed); *Andrews v. Massachusetts Bay Transit Authority*, 872 F. Supp. 2d 108 (D. Mass. 2012) (denying motion to dismiss ADA claim where plaintiff

claimed that she should have been assigned to a CSA position when injury prevented her from acting as a streetcar motorperson).

Moore does not dispute his inability to return to his position as a full-time Overhead Lineworker. (#1 ¶ 9.) He admits that he cannot perform the essential functions of his job, and he proposes no accommodation that would enable him to perform the essential functions of his job. However, as the First Circuit has explained,

> [T]he burden for the employee at the second step of the inquiry changes slightly when an employee becomes disabled, can no longer perform the essential functions of her job, and requests as an accommodation a transfer or complete reassignment of duties. Instead of addressing the essential functions of her current position, an employee must demonstrate that she can perform the essential functions of the position she desires. Moreover, the employee must demonstrate that there is an actual vacant position to which she can transfer. An employer is not required by the ADA to create a new job for an employee, nor to re-establish a position that no longer exists.

*Audette v. Town of Plymouth, MA*, 858 F.3d 13, 20–21 (1st Cir. 2017) (internal citations and quotation marks omitted).

Moore's complaint focuses on NSTAR's "past practice of offering injured employee[s] a different position" to accommodate "illness or limitations" and, therefore, asserts that his "inabilities to perform [his] previous job as a lineman" necessitated a similar accommodation. (#1 ¶¶ 9-10.) However, plaintiff has presented nothing to show that he was qualified to perform his desired accommodation – "computer work" – or that a "computer work" position was available. (#50 at 9.) Plaintiff has offered no evidence regarding his skills or abilities with respect to "computer work." He has not established that such a position was available within NSTAR. The testimony of NSTAR's leave administrator to the effect that the company would have offered

Moore some kind of sedentary work, probably with computers, is not enough. Plaintiff has failed to meet his burden.[11]

### B. *Legitimate Reason for Conduct*.

Assuming, arguendo, that Moore made a prima facie showing of discrimination, that showing creates a rebuttable presumption of discriminatory conduct which NSTAR must counter with evidence of a legitimate, non-discriminatory basis for his termination. *Cherkaoui v. City of Quincy*, 877 F.3d 14, 24 (1st Cir. 2017) (citing *Garmon*, 844 F.3d at 313). NSTAR states that plaintiff was terminated because he "abused the Industrial Accident Disability Benefits Plan by asserting he was 'totally disabled' and accepting full disability benefits while engaging in strenuous activities inconsistent with his own statements regarding his abilities." (#12 at 4; #46 at 17.) In particular, "[t]he undisputed evidence shows Moore engaging in strenuous labor and driving his truck during the time period he was claiming to be 'totally disabled' and unable to drive." (#46 at 16.) Under the *McDonnell Douglas* framework, "[t]his is only a burden of production, not a burden of persuasion. . . ." *Cherkaoui*, 877 F.3d at 22 (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991)). NSTAR has met its burden in offering a legitimate, non-discriminatory basis for Moore's termination. (#46 at 16.)

### C. *Discriminatory Animus*.

As NSTAR has satisfied the second prong of the analysis, the rebuttable presumption of discrimination disappears. *Cherkaoui*, 877 F.3d at 26. Thus, Moore must provide evidence that NSTAR's proffered explanation for his termination is merely pretextual, and that it was prompted

---

[11] NSTAR also argues that Moore cannot establish the third prong of his prima facie case, i.e., that he was subjected to an adverse employment action because of his disability. The defendant's point is well taken. The evidence proffered by plaintiff does not support an inference that he was terminated on account of any disability.

by discriminatory animus. *Id.* To support an inference of pretext, a plaintiff "may point to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons.'" *Straughn v. Delta Airlines, Inc.*, 250 F.3d 23, 42 (1st Cir. 2001) (quoting *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 2001)) (affirming summary judgment where defendant proffered sufficient evidence of plaintiff's dishonesty, which supported its basis for her termination, and plaintiff failed to demonstrate discriminatory pretext). However, where a plaintiff's "case rests on unsupported speculation and conclusory allegations . . . [it] does not raise a triable issue of fact." *Cherkaoui*, 877 F.3d at 27. It is insufficient for Moore "merely to impugn the veracity of [NSTAR's] justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's [discriminatory] motive.'" *Mesnick*, 950 F.2d at 825 (quoting *Medina-Munoz v. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir. 1990)).

Moore has failed to offer discrete, concrete evidence to demonstrate that his termination was *because of* his disability rather than his undisputed abuse of NSTAR's Industrial Accident Disability Benefits Plan.[12] Plaintiff attempts to buoy his claim by stating that he was "terminated despite numerous medical reports and proof that showed [he] was indeed unable to perform the job responsibilities required of an Overhead Line Worker. . . ." (#50 at 11.) That may be, but evidence of disability does not undercut the veracity of NSTAR's proffered reason for plaintiff's termination, i.e., his dishonesty and abuse of the Industrial Accident Disability Benefits Plan. (#46 at 19.) The undisputed evidence shows Moore engaged in physical activity wholly inconsistent

---

[12] The surveillance tape and notes are not proffered to show that plaintiff could have performed all of the duties of an Overhead Lineman. (#50 at 7.) Rather, they support defendant's legitimate reason for terminating Moore: Moore was recorded undertaking strenuous activities that diametrically opposed his representations to NSTAR that he was completely disabled. (#46 at 19.)

with his reports to NSTAR, such as driving and climbing ladders, while representing to NSTAR that he was "totally disabled" and "unable to drive." (#46 at 16.) Plaintiff does not refute the evidence of his abuse of company policy proffered by NSTAR, and has submitted no evidence to show that NSTAR's articulated reason for his termination was merely a mask for discriminatory animus. In short, Moore fails to meet his burden of demonstrating pretext.

## V. Conclusion and Order.

Construing the record in the light most favorable to Moore, he has failed to establish a prima facie case of discrimination or sufficiently create a plausible inference that NSTAR's legitimate, non-discriminatory reason for his termination was mere pretext for discriminatory animus. His claim under the ADA is untenable. It is therefore ORDERED that Defendant NSTAR Electric & Gas Co.'s Motion for Summary Judgment (#45) be, and the same hereby is, ALLOWED. Judgment shall enter for defendant.

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge

July 24, 2018